UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRY E. PICCOLELLA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:09-cv-696-M |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on April 16, 2009. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On October 18, 2006, plaintiff Sherry Elliott Piccolella (hereinafter "Plaintiff" or "Piccolella") filed an application for disability insurance benefits, alleging a disability onset date of September 1, 2006. (Administrative Record (hereinafter "Tr." at 19)). She alleged disability due to "cervical d[y]stonia / twisting of the neck". (Tr. 112). Her claim was denied by the state agency initially and on reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on June 26, 2008, at which Plaintiff appeared with counsel and testified on her own behalf. (Tr. 27-47). The ALJ also received the testimony of Vocational Expert ("VE") "Ms. Beasley".[1] *Id*. On October

---

[1] The first name, and professional qualifications, of "Ms. Beasley" are not reflected in the transcript record. See (Tr. 28, 44).

2, 2008, the ALJ denied Plaintiff's request for benefits, finding that Plaintiff had the severe impairments of cervical dystonia and essential hypertension, but that she was still capable of performing her past relevant work as a dispatcher and communications worker and therefore was not disabled. (Tr. 21, 26). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on February 11, 2009, the Appeals Council denied her request. (Tr. 1-3). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed her federal complaint on April 16, 2009. Defendant filed an answer on June 23, 2009. On August 23, 2009, Plaintiff filed her brief, followed by Defendant's brief on October 20, 2009.

Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (citations omitted). When the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Discussion: To prevail on a claim for disability insurance benefits, a claimant bears the

burden of establishing that she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505.  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.  Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform.  *E.g., see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence.  *E.g., see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis."  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step four.  He found that Plaintiff had not engaged in substantial gainful activity since September 1, 2006, her alleged onset date.  (Tr. 21). Piccolella was 46 years old as of the date of the administrative hearing, (Tr. 30), with past relevant work as a dispatcher for the Mesquite police department from November 1981 through September 2003.  (Tr. 32, 44).  The ALJ found Piccolella to have a severe combination of

3

impairments, to wit: "cervical dystonia[2] and essential hypertension", (Tr. 21), but that the combination of her impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 23).  The ALJ found Plaintiff to have a residual functional capacity ("RFC") to perform the full range of sedentary work, (Tr. 23), and that her RFC would not preclude her from performing her past relevant work as a dispatcher and communications worker through December 31, 2008, the last date on which she met insured status for benefits. (Tr. 26).  He therefore concluded that Piccolella was not under a disability and denied her claim for benefits.  *Id.*  Piccolella argues that the ALJ erred in his determination of her residual functional capacity, and that he failed to question the vocational expert.

With respect to her claim that the ALJ failed to question Ms. Beasley, the VE, the ALJ stated in support of his findings that Piccolella [was] capable of performing past relevant work as a dispatcher and communications worker, that the VE was asked to consider a hypothetical of an individual of the claimant's age, education, work experience and residual functional capacity and that the VE indicated that such an individual would be able to perform past relevant work like that which Plaintiff had performed.  (Tr. 26 at ¶ 6).

As Plaintiff points out and as the Commissioner concedes, the VE was never asked a hypothetical question on which she was asked to opine, given the severe impairments from which the ALJ found Plaintiff to be suffering.  (Tr. 21-23 at ¶ 3).  In point of fact the only matter on which the VE responded was to identify the DOT code, strength level and SVP level for work

---

[2]Dystonia: "any of various conditions ... characterized by abnormalities of movement and muscle tone".  Torticollis: "a twisting of the neck to one side that results in abnormal carriage of the head and is usually caused by muscle spasms".  See Merriam-Webster's Dictionary, http://www.merriam-webster.com/dictionary/torticollis.

as a dispatcher, as a communications supervisor, and for working with advertising material. (Tr. 44-45). The ALJ essentially put the case on hold, giving Plaintiff an opportunity to provide additional information from Dr. Mickey and from her neurologist, Dr. Maureen Watts. (*Id*. at 46).[3] Although Plaintiff testified at the administrative hearing that she was still seeing Dr. Watts for Botox treatments, the latest report in the record from this doctor was January 19, 2007, (Tr. 207), with a Botox injection on January 16, 2008. (Tr. 310). The earliest Botox injection reported in the record was on November 8, 2000. (Tr. 351-352). In his brief the Commissioner claims that the ALJ's erroneous statement in his decision that the VE testified that a person with the impairments with which Plaintiff suffered could return to their former relevant work constitutes harmless error. The Commissioner correctly observes that "[p]rocedural perfection in administrative proceedings is not required," and that a judgment should not be vacated unless the substantial rights of a party have been affected. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

In the present case, the hiatus in the evidence affects the substantial rights of the Plaintiff. The ALJ found that Plaintiff suffered from cervical dystonia based upon the consultative examination of Dr. Ukoha and the report of state agency medical consultant Dr. Moira Dolan, M.D. (Tr. 22-23, 25-26). The ALJ accorded substantial weight to the physical residual functional capacity assessment completed by Dr. Dolan on January 11, 2007. (Tr. 25-26, 299-306). In doing so, he noted that Dr. Dolan had reviewed the medical evidence of record and that her opinions were supported by the medical evidence. *Id*.

---

[3] The only additional information provided by Plaintiff prior to the ALJ's decision was a letter from Dr. Mickey dated July 9, 2008. (Tr. 564). Plaintiff's attorney submitted an additional letter from Dr. Mickey dated October 29, 2008 to the Appeals Council. (Tr. 565).

Dr. Dolan determined and the ALJ concurred that based on the evidence of record, Piccolella had the RFC to: lift / carry 20 pounds occasionally and 10 pounds frequently with unlimited pushing and pulling subject to those weight restrictions, stand / walk for about 6 hours in an 8-hour work day, sit for about 6 hours in an 8-hour work day, perform frequent climbing, stooping, kneeling, crouching, and crawling, but never any balancing, with no manipulative, visual, communicative, or environmental limitations.  (Tr. 299-303).

In her testimony at the administrative hearing, Piccolella related how the condition associated with her cervical dystonia allegedly caused her to leave her job with the Mesquite Police Department and to be unable to work as a hospital chaplain.  The weight to be given to her testimony was reserved, of course, to the ALJ.  On the other hand all the doctors' reports confirmed the obvious intermittent and jerky spasmodic movement of the neck.  (*Eg*. Tr. at 297 and 565).

The function of the VE was to correlate the non-disabling severe impairments with the Plaintiff's former jobs.  It is clear from the ALJ's comments which effectively ended the hearing on June 26, 2009, that he believed further information was necessary and that he really needed to hear from Dr. Mickey and Plaintiff's neurologist, Dr. Watts, since they were her treating doctors.  (Tr. 46).  The ALJ never received any relevant information.  In his letter dated July 9, 2008, *see* n.3, *supra*, Dr. Mickey initially stated that his treatment notes should not be used as part of a determination of disability based on cervical dystonia since his physical examination focused on the effect Piccolella's pituitary abnormality had on her vision, and he found her vision to be normal.  (Tr. 564).  Subsequently Dr. Mickey removed the benign tumor associated with her pituitary abnormality on June 30, 2009.  Plaintiff has never claimed that she had a disabling

6

vision impairment. The operation post-dated the last date of her coverage by approximately six months and therefore has no bearing on her claim.

Since none of the medical doctors was qualified to express an opinion on whether the physical impairments from which Piccolella suffered precluded her from engaging in her past relevant work and further in the absence of testimony from a VE that Plaintiff's physical impairments did not prevent her from engaging in her past relevant work on or before December 31, 2008, the Commissioner's decision that she was not disabled is not supported by substantial evidence.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order REMANDING Plaintiff's claim to the Commissioner for further proceedings in accordance with this recommendation.

Signed this 24th day of November, 2009.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE
A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place

in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.